UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CURTIS OSWALT and FEDERAL INSURANCE CO.,

Plaintiffs,

v.

RESOLUTE INDUSTRIES, INC.,

Defendant/Third Party Plaintiff,

v.

WEBASTO PRODUCTS NA, INC.,

Third Party Defendant.

IN ADMIRALTY

NO. C08-1600MJP

ORDER ON THIRD PARTY
WEBASTO PRODUCT, NA, INC.'S
MOTION FOR SUMMARY
JUDGMENT DISMISSAL

The above-entitled Court, having received and reviewed

1. Defendant Webasto Product, NA, Inc.'s Motion for Summary Judgment Dismissal (Dkt. No. 26)

2. Resolute Industries' Opposition to Webasto's Motion for Summary Judgment (Dkt. No. 35)

3. Reply in Support of Defendant Webasto Product, NA, Inc.'s Motion for Summary Judgment Dismissal (Dkt. No. 39)

and all attached declarations and exhibits, makes the following ruling:

IT IS ORDERED that the motion is PARTIALLY GRANTED and PARTIALLY DENIED:

• Third Party Defendant Webasto's motion for summary judgment of dimissal of Resolute Industries' products liability claim against them for "failure to warn/instruct" is GRANTED and that claim is DISMISSED;

**ORDER ON MTN
FOR SUMM JMT - 1**

- • Third Party Defendant Webasto's motion for summary judgment of dismissal of Resolute Industries' products liability claim against them for "defective design" is GRANTED and that claim is DISMISSED;

- • Third Party Defendant Webasto's motion to dismiss Resolute Industries' claim of "breach of contract and/or warranty" is DENIED.

**Background**

Plaintiff Oswalt owned a boat called the M/V Chug. After smelling coolant coming from the on-board heater, Oswalt called Defendant Resolute Industries ("Resolute") to repair the heater, and, on October 2, 2006, Resolute sent an employee named Albrecht.

There are conflicting claims concerning whether Albrecht had any prior training in servicing Webasto heaters or had seen an instruction/service manual for the heater before working on the Webasto heater on Oswalt's vessel (although the conflict does not rise to the level of "genuinely disputed issue of material fact;" _see infra_). What is not disputed is: Albrecht turned off the "Heater" breaker on the breaker panel onboard the vessel, removed the "burner unit" off the heater and set it aside. He then received a call requesting his assistance elsewhere. He left the M/V Chug to respond to the request and returned some time later to find the boat on fire. The exact circumstances of the origin of the blaze remain unknown, although it is agreed that somehow the burner unit activated and ignited flammable material nearby.

Oswalt's insurer (Plaintiff Federal Insurance Company) paid the claim, then filed this subrogated claim against Resolute for alleged negligence in their repair of the heater. Resolute in turn filed a third party action against Webasto Products, NA, Inc. ("Webasto"), the manufacturer of the vessel's heater. The third-party lawsuit alleges "negligence, fault, omission and or breach of contract and/or warranty" on the part of Webasto. Dkt. No. 4, p. 3 ¶ 4. By this motion for summary judgment, Webasto seeks dismissal of all claims against it.

**Discussion/Analysis**

I. Products liability

The product liability argument is framed within the language of the Restatement (Third) of Torts § 2, which states:

> A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product:
> * * * *
> (b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor. . . and the omission of the alternative design renders the product not reasonably safe;
> (c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor. . . and the omission of the instructions or warnings renders the product not reasonably safe.

While the Ninth Circuit has not formally held that Restatement (Third) § 2 replaces the Restatement (Second) of Torts § 402A, there is case law from the Ninth and other circuits which cites Restatement (Third). <u>See</u> <u>All Alaskan Seafoods, Inc. V. Raychem Corp.</u>, 197 F.3d 992, 995 (9th Cir. 1999); and <u>Krummel v. Bombardier Corp.</u>, 206 F.3d 548, 551 (5th Cir. 2000). The parties both argue based on the language of Restatement (Third), and the Court will treat this most recent Restatement as controlling for purposes of this order.

In its briefing, Resolute identifies "two theories against Webasto:" that the Webasto heater instructions were "insufficient and dangerous" and that the heater was negligently designed because it lacked an "automatic current cutoff" that would have disabled it any time that it was opened. Response, p. 3.

*A. Inadequate warnings or instruction*

Albrecht claims to have a taken a course in servicing Webasto heaters approximately 2 months before the incident aboard the M/V Chug. Decl. of Kame'enui-Ramirez, Ex. D., pp. 75-76. Resolute's briefing states that "Mr. Albrecht had recently attended the Webasto training class and had class materials, including the Webasto repair manual, in mind." Response, p. 5.

The record does not support Resolute's position. On the contrary, Webasto succeeds in

establishing as a fact beyond dispute that Albrecht could not have attended a Webasto training prior to the fire aboard the boat.  It presents a declaration from the president of Sure Marine Service (which presents the trainings) attesting that there was only one Webasto in-house training in 2006 and it took place on October 18 (almost two weeks after the fire).  Decl. of Sure Marine Service Inc., p. 2.  The Sure Marine declaration attaches as an exhibit the class roster, which reflects that Albrecht was in attendance.  <u>Id.</u>, Exh. A.  Resolute attempts to create a disputed issue of fact by presenting an affidavit from Albrecht that he is "certain" that he attended the class prior to the fire.  Decl. of Albrecht, p. 1.  As proof, he attaches a time card which he claims establishes his attendance on September 26, 2006.  <u>Id.</u>, Ex. A.  The time card is completely illegible and the Court finds it inadequate for the purposes for which it was submitted.  For Albrecht to merely state that he attended the training in August 2006 is, of course, insufficient at the summary judgment stage to carry Resolute's burden of proof.

In light of this, Resolute's arguments about the adequacy of the instructions are irrelevant and its claim unfounded.  If Albrecht did not read the instructions prior to working on the heater, it does not matter whether they were sufficient to warn him of any dangers connected with disabling the unit to service it.  Resolute will be unable to establish that the allegedly inadequate warnings or instructions were a proximate cause of the injury to the vessel.  <u>Peitzmeier v. Hennessy Industries, Inc.</u>, 97 F.3d 293, 300 (8th Cir. 1996).

Even assuming *arguendo* that Albrecht had read the Webasto manual and the adequacy of its warnings was in issue, Resolute's expert fails to provide testimony which would be sufficient as a matter of law for Resolute to prevail on this claim.    Specifically, he fails to either provide (1) evidence that other heater manufacturers employ different, more effective warnings, (2) alternate hypothetical warnings which would have been more effective and (3) evidence that he tested the hypothetical warnings with other users and found them more effective.

It has previously been held that merely calling a warning "inadequate" is insufficient to carry the burden of proof in product liability litigation.  In <u>Jaurequi v. Carter Mfg. Co., Inc.</u>, 173 F.3d 1076, 1084 (8th Cir. 1999), the appellate court upheld the exclusion of expert testimony that warnings

concerning a crop harvester were insufficient because the experts had neither (1) "created or even designed a warning. . . which would have been more appropriate, much less tested its effectiveness;" or (2) "point[ed] to other manufacturers. . . who were employing" alternate warnings. Id. "Simply concluding. . . that a more prominent warning would decrease the danger, although plausible, does not make such a conclusion 'relevant' in a case in which the burden is upon plaintiffs to prove proximate causation by a preponderance of the evidence." Shepherd v. Michelin Tire Corp., 6 F.Supp.2d 1307, 1313 (N.D.Ala. 1997).

Resolute has failed, in the face of Webasto's legal challenge, to produce evidence that would permit them to prevail on the "inadequate warnings/instructions" product liability claim and Webasto's motion to dismiss the claim on summary judgment will be granted.

### B. Defective design

The report of Resolute's expert concludes that the design of the Webasto heater was defective in that it lacked a "built-in safety switch to automatically disconnect power to the heater." Decl. of Kame'enui-Ramirez, Ex. G, ¶ 3.3. Resolute argues in its briefing that this would have been a "simple" and "cheap" design alteration and that its absence is proof of "negligent" design because the unit was unreasonably dangerous without it. Response, p. 3.

This argument is similarly lacking rigor and proof. Fed. Rule of Evid. 702 permits testimony on matters of technical expertise or other specialized knowledge providing that the witness is qualified and (1) the testimony is based on sufficient data, (2) is the product of reliable principles and methods and (3) the witness has applied the principles and methods reliably to the facts. The Court finds no evidence that Mr. Way, Resolute's expert on the issue before the Court, has employed reliable principles and methods or applied them to the facts of this case.

Setting aside the question of Way's qualifications as an "expert" on maritime heating systems (which Webasto does not attack until its reply briefing), his testimony does not establish Resolute's claim for two reasons. First, Way admitted during deposition testimony that his opinion that a safety switch would be a desirable refinement to the design of the Webasto heater is not based on any industry regulations or standards. Decl. of Kame'enui-Ramirez, Ex. A, p. 14 (42:10-13). Second,

neither Mr. Way nor Resolute has produced any evidence that any other marine heater manufacturer includes such a device on their products. Nor, despite its claim that the design modification suggested its expert would be "simple" and "cheap," does Resolute present any proof that the design modification would actually be either of those things.[1] In fact, Webasto's expert presents testimony that she inspected marine heaters from over six major manufacturers and found that none of them use "a simple wire, kill switch, positive disconnect switch or any other mechanism suggested by Resolute's expert Mr. Way." Decl. of Mazon, ¶ 7.

Faced with a similar situation, the Eighth Circuit, pointing to a plaintiff's lack of evidence that any other manufacturer incorporated the party's suggested design into the product at issue, observed that "[i]n short, [the expert] has provided no basis for us to believe that his opinions are anything more than unabashed speculation." Jaurequi, 173 F.3d at 1084. The appellate court upheld the exclusion of the expert's opinion on that basis.

Webasto is entitled to summary judgment on this claim; Resolute will not be permitted to go forward with their product liability theory of defective product design.

II. Breach of contract and/or warranty

Resolute's third party complaint alleges "breach of contract and/or warranty" on Webasto's part. Answer/Third Party Complaint, Dkt. No. 4, p. 3 ¶ 4. Webasto's only defense to this cause of action is its argument that, because it is not in privity with Resolute and Resolute did not buy the heater, it is immune to contract or warranty claims from a third-party plaintiff. Motion, p. 7.

But, as Resolute points out, FRCP 14(c) states that "[i]n an admiralty suit, once a defendant impleads a third party. . . the suit proceeds as if the original plaintiff had sued the third party." This negates Webasto's "no privity" defense. Webasto does not respond to this argument in their reply and the Court takes that non-response as some evidence that the argument has merit. See CR 7(b)(2). Additionally, the rule appears clear on its face that a third-party plaintiff in an admiralty suit may

---

[1] Furthermore, the Restatement (Third) of Torts § 2 states clearly that the proof of Resolute's defective design claim rests on its ability to establish that there was a "reasonable alternative" design, not a simple and cheap one. However, Resolute offers no more proof of a reasonable, alternative design than it does of a simple, cheap modification.

assert an original plaintiff's claims in addition to its own. As stated in <u>Moore's Federal Practice,</u> admiralty impleader ". . . is broader than the general right to implead in that it permits joinder of a third-party defendant on the basis of its liability to the plaintiff, not just to the defendant." Moore's Federal Practice - Civil, § 14.52.

## Conclusion

Resolute's proof that their employee read Webasto's manual prior to the fire fails and thus their "inadequate warning/instruction" claim fails; in any event, Resolute's failure to propose alternate instructions and demonstrate their efficacy also requires dismissal of the claim. Resolute's failure to demonstrate that their expert's opinion regarding the design defects of the heater is based on any industry standard or is reflected in similar designs in similar marine heater products also entitles Webasto to summary judgment on the "defective design" claim.

Resolute will be permitted to proceed with the contract and warranty claims on the strength of FRCP 14(c), to the extent that those claims have any validity outside its claims of "inadequate instructions/warnings" and "defective design."


The clerk is ordered to provide copies of this order to all counsel.

Dated: February __4___, 2010

Marsha J. Pechman
U.S. District Judge